◆JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Gonzales, Robin

**DEFENDANTS**
City of Martinez; Cutaia, David; Simonetti, Tom; Smith, Mark; Peterson, Mark; Blubaugh, Don; and DOES 1-100 inclusive ⊞

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Contra Costa
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Toschi, Sidran, Collins & Doyle, 100 Webster Street, Suite 300
Oakland, CA 94607, Tel: (510) 835-3400  ⊞

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☒ 3  Federal Question
       (U.S. Government Not a Party)

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                   and One Box for Defendant)

|                                      | PTF | DEF |                                                      | PTF | DEF |
|--------------------------------------|-----|-----|------------------------------------------------------|-----|-----|
| Citizen of This State                | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State             | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                       | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 385 Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | Product Liability | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities— | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus— | | to Justice |
| | ☐ 446 Amer. w/Disabilities— | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       another district
       (specify)

☐ 6  Multidistrict
       Litigation

☐ 7  Appeal to District
       Judge from
       Magistrate
       Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Employment-Disability discrimination and harassment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $  According to proof

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  4/1/08

SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 03/08) Civil Summons

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| ROBIN GONZALES | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. |
| CITY OF MARTINEZ, SEE ATTACHED | ) |
| Defendant | ) |

**CV 08**

**1754**

**JSW**

### Summons in a Civil Action

To: _____

*(Defendant's name)*

A lawsuit has been filed against you.

Within  **30**  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RICHARD W. WIEKING

Name of clerk of court

Date:  APR  1 2008

Deputy clerk's signature

MARY ANN BUCKLEY

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

✎ AO 440 (Rev. 03/08) Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

    (1) personally delivering a copy of each to the individual at this place, _____; or

    (2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
       who resides there and is of suitable age and discretion; or

    (3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
    _____; or

    (4) returning the summons unexecuted to the court clerk on _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00_____.

Date: _____

                                       _____
                                              Server's signature

                                       _____
                                              Printed name and title

                                       _____
                                              Server's address

UNITED STATES DISTRICT COURT
For the
NORTHERN DISTRICT OF CALIFORNIA

Defendants:

David Cutaia, Tom Simonetti, Mark Smith, Gary Peterson, Don Blubaugh and DOES 1-100 inclusive

DAVID R. SIDRAN, ESQ.  (SBN 121063)
THOMAS C. CROWELL, ESQ.  (SBN 172799)
CHRISTINE Y. LEE, ESQ.  (SBN 247032)
TOSCHI ▪ SIDRAN ▪ COLLINS ▪ DOYLE
A Professional Corporation
100 Webster Street, Suite 300
Oakland, California  94607
Tel:    (510) 835-3400
Fax:    (510) 835-7800

E-filing

Attorneys for Plaintiff ROBIN GONZALES

UNITED STATES DISTRICT COURT

JSW

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN GONZALES,<br><br>             Plaintiff,<br><br>vs.<br><br>CITY OF MARTINEZ, DAVID CUTAIA, TOM SIMONETTI, MARK SMITH, GARY PETERSON, DON BLUBAUGH and DOES 1-100 inclusive,<br><br>             Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br><br>1.  DISABILITY DISCRIMINATION UNDER AMERICANS WITH DISABILITIES ACT, 42 USC sec. 12101 et seq.<br><br>2.  DISABILITY DISCRIMINATION UNDER CALIFORNIA GOVERNMENT CODE sec. 12940(a)<br><br>3.  HARASSMENT BASED ON DISABILITY UNDER CALIFORNIA GOVERNMENT CODE sec 12940(k)<br><br>4.  FAILURE TO PREVENT AND REMEDY HARASSMENT UNDER CALIFORNIA GOVERNMENT CODE sec. 12940(k)<br><br>5.  RETALIATION UNDER CALIFORNIA GOVERNMENT CODE sec. 12940(h)<br><br>6.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>7.  INJUNCTIVE RELIEF<br><br>DEMAND FOR JURY TRIAL |

1       Plaintiff, ROBIN GONZALES alleges against defendants CITY OF MARTINEZ,

2   DAVID CUTAIA, TOM SIMONETTI, MARK SMITH, GARY PETERSON, DON

3   BLUBAUGH and DOES 1-100 inclusive, and each of them, as follows and demands a jury trial

4   on all matters herein alleged.

### JURISDICTION AND VENUE

6       1.    This court has jurisdiction over this action based on 28 U.S.C. sec. 1331. Venue is

7   proper in this court because the acts of which plaintiff complains took place within the Northern

8   District of California.

### PARTIES

10      2.    Plaintiff, ROBIN GONZALES (hereinafter "GONZALES") is and was, at all

11  times material herein, a citizen of the State of California, residing in Concord, California.

12      3.    On information and belief, defendant, CITY OF MARTINEZ (hereinafter

13  "MARTINEZ") is and was, at all material times herein, a public entity organized and existing as a

14  political subdivision of the State of California.

15      4.    On information and belief, defendant DAVID CUTAIA (hereinafter "CUTAIA"),

16  was and is a citizen of the State of California, residing in Solano County, California. CUTAIA

17  was Chief of Police for MARTINEZ up to December 31, 2007 after which he retired from

18  MARTINEZ.

19      5.    On information and belief, defendant TOM SIMONETTI (hereinafter

20  "SIMONETTI"), was and is a citizen of the State of California, residing in Solano County,

21  California. SIMONETTI was a Commander for MARTINEZ up to December 31, 2007 after

22  which he became Chief of Police.

23      6.    On information and belief, defendant MARK SMITH (hereinafter "SMITH") was

24  and is a citizen of the State of California, residing in Contra Costa County, California. SMITH

25  was at all relevant times a Commander for MARTINEZ.

26      7.    On information and belief, defendant GARY PETERSON (hereinafter

27  "PETERSON") was and is a citizen of the State of California, residing in Solano County,

28  California. PETERSON was a Detective Sergeant for MARTINEZ, and became a Commander as

1   of January 1, 2008.

2        8.    On information and belief, defendant DON BLUBAUGH (hereinafter

3   "BLUBAUGH") was and is a citizen of the State of California, residing in Contra Costa County,

4   California. BLUBAUGH was City Manager for MARTINEZ at all relevant times.

5                         **FACTS**

6        9.    GONZALES started working at MARTINEZ as a cadet in the early 1980's, and

7   then left to work for the Contra Costa County Sheriff's department as a dispatcher. GONZALES

8   returned to the MARTINEZ police department in January 1985 as a dispatcher and has been

9   continuously employed by MARTINEZ ever since.

10       10.    After approximately one year into her second tenure at MARTINEZ the police

11   department created the position of police assistant with the primary duties of that position being

12   to maintain the evidence room for the MARTINEZ police department. GONZALES took the job

13   of police assistant and began taking classes on her own time to learn about evidence collection,

14   preservation and procedures.  Up to the point of GONZALES taking the position of police

15   assistant, there had been no specific employee at MARTINEZ charged with maintaining the

16   evidence room and consequently the evidence room was in disarray upon the arrival of

17   GONZALES. After several years, GONZALES began taking crime scene investigation courses

18   and began handling evidence at crime scenes for MARTINEZ.

19       11.    In 1992, GONZALES requested a job reclassification change to Evidence/Property

20   Technician, which request was supported and recommended by then Chief of Police Boyd and

21   then Commander CUTAIA.    The job reclassification was approved by MARTINEZ and

22   GONZALES held the position of Evidence/Property Technician ("EPT") until the position was

23   eliminated by MARTINEZ on or about November 28, 2007. As an EPT, GONZALES had all the

24   duties she formerly had as a police assistant together with detailed evidence work. GONZALES

25   also worked as a dispatcher intermittently during the aforementioned time frame. GONZALES

26   is, up to this day, the expert on evidence collection and maintenance at MARTINEZ, and despite

27   elimination of the EPT position, she is still responsible for training officers in evidence matters

28   and running the evidence room.

TOSCHI ▪ SIDRAN ▪
COLLINS ▪ DOYLE

A PROFESSIONAL
CORPORATION

12.   Over the course of her over twenty-three (23) year tenure at MARTINEZ, GONZALES suffered a number of industrial injuries, the most notable of which for purposes of this complaint, occurred on or about June 9, 2000 and consisted of a major injury to GONZALES'S neck with herniated disks which resulted in doctor imposed restrictions on time allowed for dispatching, no repetitive reaching, as well as a 23% permanent disability rating. Said injury was caused in part by the nonergonomic configuration of the dispatch center that was corrected after GONZALES suffered her industrial injury.  Said condition was aggravated by a major on-the-job injury.

13.   GONZALES'S neck injury of June 9, 2000, consisting of multiple herniated cervical disks, limited her ability to work as a dispatcher on a permanent basis insofar as that activity is stressful on the cervical spine.  The EPT job description required GONZALES to fill in or relieve in dispatch.  Prior to November 2007, GONZALES filled in on occasion as a dispatcher in the dispatch center.  While a number of other MARTINEZ employees had dispatch duties included as part of their job descriptions, GONZALES was the only one of those employees, which included police assistants, who from 2005 and 2007 was assigned to dispatch for approximately two shifts per week by PETERSON and MARTINEZ, despite her industrial injury and resulting disability affecting her ability to work in dispatch.

14.   In approximately 2005, PETERSON became the direct supervisor of GONZALES. Up to that time, GONZALES had been working sporadically in dispatch and her primary job concerned the evidence room.  Upon taking over as her supervisor, PETERSON ordered GONZALES to begin working one day per week in the dispatch center. Over time, PETERSON increased the time and number of days GONZALES had to work in the dispatch center to two to three (2-3) shifts per week, with full knowledge that dispatch work aggravated the industrial injury to her neck.

15.   Prior to PETERSON taking over as supervisor of GONZALES, her work primarily focused on the evidence room in her capacity as EPT.  GONZALES has never had work restrictions affecting her efficacy in the evidence room.

16.   Prior to PETERSON taking over as supervisor of GONZALES, she took very little

TOSCHI ● SIDRAN ●
COLLINS ● DOYLE

A PROFESSIONAL
CORPORATION

1    sick leave and was awarded the sick leave bonus in that regard. After PETERSON took over as

2    supervisor of GONZALES, he began a concerted campaign to harass, retaliate and discriminate

3    against her on account of her industrial injury and disability, which included but was not limited

4    to, increasing her time as a dispatcher while failing to assign dispatch shifts to other MARTINEZ

5    employees, including police assistants, who had dispatching in their job descriptions.

6    Consequently GONZALES began taking regular sick time to recover from the aggravation to her

7    neck injury caused by increased dispatching duties. Note that during this period, PETERSON

8    forced GONZALES to run back and forth between the dispatch center and the evidence room

9    (which are located in separate buildings) in order to release evidence while she was on dispatch

10    duty.

11        17.    In or about 2005, because of repeated harassment by PETERSON on account of

12    her disability, GONZALES submitted a written complaint to CUTAIA and SIMONETTI. In

13    response to the written complaint, CUTAIA, SIMONETTI, SMITH and PETERSON embarked

14    on a course of conduct designed to retaliate against GONZALES for her work restrictions due to

15    her disability, as well as to retaliate against her for complaining about harassment by PETERSON

16    on account of her disability. That course of retaliatory conduct included the plan to eliminate the

17    EPT position, which in effect would eliminate the position GONZALES had held at MARTINEZ

18    since 1992 when it was created. The elimination of the EPT position was therefore a direct

19    retaliatory act against GONZALES, despite the fact that on paper it appeared to be a sterile and

20    neutral reallocation of positions within the police department.

21        18.    Following submission of the aforementioned written complaint, as GONZALES

22    was walking by SIMMONETTI'S office while in the course and scope of her employment, she

23    heard SIMONETTI say to then Chief CUTAIA to the effect that GONZALES was running a

24    scam with her doctor's note which limited her job duties due to her neck injury in 2000. After

25    having been falsely accused by SIMONETTI of dishonesty and corruption in the form of

26    "running a scam," GONZALES spoke to CUTAIA and denied SIMONETTI'S accusation. In

27    response, CUTAIA screamed and yelled at GONZALES in retaliation for her defending herself

28    against SIMONETTI'S accusation. Shortly thereafter, GONZALES was informed by CUTAIA

that her position of EPT was going to be eliminated because it was no longer needed.   CUTAIA stated to GONZALES that the county crime lab would respond to MARTINEZ crime scenes after her EPT position was eliminated.

19.     In response to CUTAIA'S statement regarding the crime lab, GONZALES contacted the county crime lab and was advised that in fact they would only respond to MARTINEZ crime scenes in an advisory capacity and that they wanted someone in the department who could handle evidence collection.  GONZALES reported her findings from the crime lab in writing to the MARTINEZ city manager who indicated he would provide that information to the MARTINEZ chief.  The position of county crime lab was thereafter ignored by MARTINEZ because the true reason for elimination of the EPT position was to harass and discriminate against GONZALES individually on account of her disability and had nothing whatsoever to do with either a decrease in crime in Martinez, a decrease in the need for an EPT at MARTINEZ or a plan to outsource the EPT work to the County Crime Lab.

20.     Prior to threatening elimination of her EPT position, SIMONETTI told GONZALES that he found doctor's notes in her personnel file that contained work restrictions and limitations on account of her industrial injuries.  SIMONETTI also told GONZALES that there are only two people in the MARTINEZ with written work limitations, *and he does not like it*.  SIMONETTI then ordered GONZALES to go back to her doctor and get her note updated, implying that she needed to have her doctor eliminate her work restrictions.  SIMONETTI made GONZALES take personal vacation days to see the doctor regarding his dissatisfaction with those work limitations.   Upon seeing her doctor at SIMONETTI'S instruction, GONZALES was advised by her neurologist that she might have ADA issues, insofar as MARTINEZ had accommodated her work restrictions for a number of years but now wanted to change the rules.

21.     In June 2006, PETERSON reprimanded GONZALES in writing for sick leave abuse at a time when GONZALES took time off work due to her industrial injury and was therefore protected by the California Family Rights Act.  When GONZALES asked about family medical leave she was told she would have to take it unpaid despite the fact that she had accrued over 500 unused sick leave hours, vacation and comp time.

22.    In November 2007 MARTINEZ eliminated the EPT position, ostensibly to accommodate a new dispatcher position due to the need for additional personnel in dispatch. At the same time, MARTINEZ has had an unfilled police assistant position for several years. Rather than reallocate the unused police assistant position to dispatch, which would have had no effect on any existing employee of MARTINEZ, CUTAIA, SIMONETTI, SMITH and PETERSON schemed to eliminate the EPT position held by GONZALES, as an act of harassment, retaliation and discrimination on account of her disability, while continuing to leave the open police assistant position unfilled.

23.    When GONZALES was first advised that the EPT position would be eliminated, she started a grievance procedure as outlined in the MARTINEZ memorandum of understanding with its employees ("MOU"). Despite the fact that the grievance included complaints against PETERSON, GONZALES was instructed to first bring her grievance directly to PETERSON. Following submission of the grievance to PETERSON, the MOU required it be brought to the Commander and Chief of Police. Under the MOU the City Manager, BLUBAUGH was to hire two investigators to investigate the grievance, one chosen by MARTINEZ and one chosen by GONZALES. Instead, BLUBAUGH hired one investigator in the employ of the City's outside counsel. The grievance was then denied as the result of a skewed and biased investigation as to which the outcome was preordained.

24.    Upon elimination of her position as EPT, GONZALES was provided two (2) alternative positions at MARTINEZ: dispatcher or police assistant. Despite the fact that there were potentially a number of other positions at MARTINEZ that could accommodate the disabilities of GONZALES, no effort was made to find any such alternative positions. GONZALES was then ordered to see a neurologist chosen by MARTINEZ, and that neurologist corroborated the findings and work restrictions placed by GONZALES'S personal neurologist, which effectively precluded her from taking the dispatcher position.

25.    In June 2007, GONZALES hired ADA specialist, Susan Skamser and had an interactive meeting with MARTINEZ on June 26, 2007. At that time MARTINEZ was informed that GONZALES could not do the dispatch position fulltime and it was questionable whether she

1  could do the police assistant job given her disabilities and restrictions. Despite the fact that

2  several positions have opened up at MARTINEZ during the relevant time frame, including

3  Chief's Secretary, Records Clerk, Payroll Clerk at City Hall (2 openings), Administrative Aid in

4  Records Department, Events Coordinator at City Hall, Personal Technician at City Hall, Business

5  License Clerk, Water Department Clerk and Permit Technician, all of which would have

6  accommodated her work restrictions, GONZALES was offered none of those positions at

7  MARTINEZ in connection with elimination of her EPT position.

8           26.     In connection with the disability discrimination experienced by GONZALES, she

9  filed a complaint with the California Department of Fair Employment And Housing ("DFEH").

10  That complaint has been investigated and concluded with a "right to sue" letter from DFEH such

11  that GONZALES has exhausted her administrative remedies both through DFEH and

12  MARTINEZ.

13          27.     On June 26, 2007, GONZALES was informed by the BLUBAUGH that

14  MARTINEZ would agree to put her in the police assistant position upon elimination of the EPT

15  position *IF AND ONLY IF*, she dropped her DFEH complaint.  When GONZALES asked what

16  would happen if she did not dismiss her DFEH complaint the BLUBAUGH told her that her pay

17  would be frozen.

18          28.     On July 31, 2007, BLUBAUGH again summoned GONZALES to his office and

19  told her that if she did not agree to his forthcoming proposal, their meeting never happened.  The

20  proposal was that GONZALES would receive five (5) years of "age" through PERS which would

21  cost the city $42,000.  MARTINEZ would also give GONZALES two (2) years of service so she

22  could get full medical coverage upon retirement.  BLUBAUGH also informed GONZALES that

23  SIMONETTI was going to be promoted to Chief upon the retirement of CUTAIA and he did not

24  think GONZALES would be able to "get along" in the department anymore.

25          29.     The matter of eliminating the EPT position for GONZALES was set for a vote

26  before the City Council at a time when MARTINEZ knew GONZALES was scheduled to be out

27  of state on vacation.  MARTINEZ ignored a request by GONZALES to postpone the decision on

28  eliminating her position until a date she could appear before City Council and ignored a plea by

1    her attorney at the City Council meeting for such a postponement.  MARTINEZ then eliminated

2    her position without comment or further opportunity to speak before the City Council.

3          30.     On October 23, 2007 GONZALES received a letter from MARTINEZ constituting

4    a layoff notice.  The stated reasons for laying off GONZALES were pretextual and included a

5    claimed lack of work.  As possible accommodations for her disability, MARTINEZ offered

6    GONZALES the positions of maintenance worker or police officer trainee, in addition to the

7    police assistant and dispatcher jobs previously offered.  MARTINEZ was fully aware at that time

8    that her disabilities prevented GONZALES from being a maintenance worker or police officer.

9    She was then given ten (10) days to choose her new position.

10         31.     On August 17, 2007 GONZALES submitted a request for two (2) days of vacation

11   in January 2008.  The vacation request was not approved, despite the fact that such a request had,

12   to the knowledge of GONZALES, never been denied by MARTINEZ in the past.  GONZALES

13   was forced to submit a grievance on the denial of the vacation in order to have her vacation

14   request approved.  Apparently, the delay in responding to GONZALES'S vacation request was

15   caused by PETERSON'S retaliatory conduct in failing to submit the request for approval.

16         32.     On November 21, 2007 GONZALES reluctantly accepted the demotion to police

17   assistant since her only other choice was to be unemployed.   As a single mother, unemployment

18   was not a viable economic option for GONZALES.

19         33.     On December 1, 2007 GONZALES submitted a complaint regarding a hostile

20   work environment based on PETERSON and the dispatch supervisor conspiring to harass and

21   discriminate against GONZALES on account of her disability, based on a conversation that took

22   place between PETERSON and the dispatch supervisor on an open recorded line in the dispatch

23   center in which PETERSON and the dispatch supervisor were overheard colluding to further

24   harm the employment status of GONZALES at MARTINEZ.  After a cursory investigation of

25   said complaint which resulted in the self-serving finding that the complaint was not well founded,

26   MARTINEZ instigated an internal affairs investigation of GONZALES in retaliation for reporting

27   the further harassment, retaliation and discrimination by PETERSON set forth in this paragraph.

28         34.     On December 4, 2007 GONZALES was informed that her primary duty as police

TOSCHI ▪ SIDRAN ▪
COLLINS ▪ DOYLE
A PROFESSIONAL
CORPORATION

1   assistant would be to take over training, and to continue handling the evidence room as well as

2   dispatching on a fill in basis. GONZALES complained that having to handle both evidence and

3   training was too much for one person to handle: Her complaint has thus far been ignored.

4       35.   Upon taking over training for MARTINEZ, GONZALES learned that training was

5   in disarray with a long backlog of unfinished work by her predecessor. GONZALES submits that

6   training in itself is a full-time job within MARTINEZ, while handling the evidence room is also

7   at least a 20-30 hours per week position. Yet, MARTINEZ has required GONZALES to handle

8   both training, evidence and dispatch duties in her new demoted position as police assistant.

9   Despite using the lack of need for an EPT as a pretext for eliminating her position, MARTINEZ

10  has thus far experience no decline in the intake of crime scene and other evidence, and is

11  continuing to have GONZALES handle her former duties as EPT in her new demoted position.

12      36.   GONZALES is informed and believes and based thereon alleges, that the current

13  plan of harassment, retaliation and disability discrimination being directed against her is an effort

14  to overwork her to the point she is forced to quit, by assigning her more job duties than a single

15  fulltime employee could reasonably be expected to complete in a regular work week.

16      37.   In addition to harassing, retaliating against and discriminating against

17  GONZALES on the job on account of her disability, MARTINEZ has also effectively prevented

18  GONZALES from obtaining employment elsewhere. In September 2006, GONZALES was a

19  candidate for a desirable position at the Citrus Heights Police Department. While the job in

20  Citrus Heights would have involved a substantially longer commute than her current commute

21  from her home in Concord, GONZALES was willing to endure the commute to Citrus Heights in

22  order to escape ongoing harassment, retaliation and discrimination at MARTINEZ. After passing

23  all stages of the employment process including the polygraph, the last stage of the employment

24  process for City of Citrus Heights was a background investigation. When the background

25  investigator from Citrus Heights made appointments with SMITH of MARTINEZ, SMITH first

26  failed to appear for the meeting and later refused to speak with the Citrus Heights investigator.

27  The Citrus Heights investigator advised GONZALES that in his eleven (11) years as a

28  background investigator he had never had a public agency refuse to speak to him about an

Toschi ▪ Sidran ▪
Collins ▪ Doyle

A Professional
Corporation

1    employee. A few days later Citrus Heights called GONZALES at work to advise her that she did

2    not receive the job: Due to the upset and distress from this event, which made clear that not only

3    was MARTINEZ trying to harass her out of her job, but that MARTINEZ also intended to

4    prevent her from getting another job, GONZALES had a car wreck on the way home from work

5    that day. GONZALES is informed and thereon alleges that MARTINEZ is in the practice of fully

6    cooperating with background investigators from other police departments regarding efforts by

7    MARTINEZ personnel to change jobs, and that the refusal of MARTINEZ to cooperate with

8    Citrus Heights in her case, was yet another act of harassment, retaliation and discrimination

9    against GONZALES on account of her disability.

10        38.    GONZALES timely filed DFEH complaints and Government Code claims under

11    the California Tort Liability Act against MARTINEZ, CUTAIA, SIMONETTI, SMITH,

12    BLUBAUGH and PETERSON. GONZALES has received right to sue letters from DFEH as to

13    said defendants, and her Government Code claims were denied by operation of law when they

14    were not responded to within 45 days of submission. GONZALES timely files this lawsuit

15    against said defendants following such DFEH complaints and Government Code claims.

16                                **FIRST CAUSE OF ACTION**

17        **DISABILITY DISCRIMINATION UNDER AMERICANS WITH DISABILITIES**

18                            **ACT, 42 USC sec. 12101 et seq.**

19        39.    GONZALES incorporates by reference and realleges paragraphs 1 through 39 as

20    though fully set forth herein.

21        40.    The Americans With Disabilities Act at 42 USC sec. 12101 *et. seq.*, makes it an

22    unlawful employment practice to discriminate against an individual on account of their physical

23    disability.

24        41.    At all times mentioned herein, GONZALES was afflicted with herniated disks in

25    her cervical spine which substantially limited major life activities in terms of range of motion of

26    her arms and neck the routine physical activities of reaching and grasping with her hands and

27    arms.

28        42.    At all times herein mentioned MARTINEZ, CUTAIA, SIMONETTI, SMITH,

1  BLUBAUGH and PETERSON as well as other agents and employees of MARTINEZ
2  discriminated against GONZALES by berating, humiliating, intimidating, and harassing
3  GONZALES as set forth more fully above. Specifically, defendants have embarked on a course
4  of action to force GONZALES out of her employment at MARTINEZ by eliminating her
5  position, subjecting her to a hostile work environment, demoting her, and now saddling her with
6  more work than one full-time employee could reasonably be expected to complete in a regular
7  work week.

8      43.    Notwithstanding complaints by GONZALES regarding the aforementioned
9  discrimination, MARTINEZ failed and refused to correct or reprimand its employees such as
10  CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON, and instead ratified and
11  approved their behavior by refusing to acknowledge any wrongdoing on their part and allowing
12  them to create and maintain an abusive and hostile work environment at MARTINEZ.

13      44.    As a proximate result of the defendants' conduct against GONZALES as alleged
14  above, GONZALES has been harmed and has suffered as loss of employment benefits, including
15  being forced to exhaust her sick leave, as well as extreme emotional distress, mental anguish,
16  depression, anxiety, loss of sleep, problems with concentration, and other physical manifestations
17  of stress such as the onset of diabetes, in addition to attorney's fees and costs. As a result of such
18  discrimination and consequent harm, GONZALES has suffered such damages in an amount
19  according to proof.

20      WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set
21  forth.

22              **SECOND CAUSE OF ACTION**
23      **DISABILITY DISCRIMINATION UNDER CALIFORNIA**
24          **GOVERNMENT CODE sec. 12940(a)**

25
26      45.    GONZALES incorporates by reference and realleges paragraphs 1 through 44 as
    though fully set forth herein.
27
28      46.    California Government Code sec. 12940(a) makes it an unlawful employment
    practice "For an employer, because of the physical disability, mental disability, medical

TOSCHI ▪ SIDRAN ▪
COLLINS ▪ DOYLE

A PROFESSIONAL
CORPORATION

condition… of any person … to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

47.    At all times mentioned herein, GONZALES was afflicted with herniated disks in her cervical spine which substantially limited major life activities in terms of range of motion of her arms and neck the routine physical activities of reaching and grasping with her hands and arms.

48.    At all times mentioned herein, MARTINEZ, through its employees and agents, including but not limited to CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON, discriminated against GONZALES by berating, humiliating, intimidating and harassing her as set forth more fully above.  MARTINEZ through its employees and agents, including but not limited to CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON negatively affected GONZALES'S employment benefits and privileges by eliminating her position as EPT, writing her up for abuse of sick leave, instigating internal affairs investigations against her and imposing upon her an impossible work load as well as dispatch duties that were known to cause her physical harm while not assigning those same duties to other qualified employees with dispatch duties in their job descriptions.   The discrimination has increased in intensity and severity such that GONZALES'S ability to do her work has been affected and she has suffered extreme emotional distress.

49.    The discrimination to which GONZALES has been subjected was based on no other reason that GONZALES'S industrial injuries and resulting disabilities including but not limited to her cervical disk herniations and resulting work restrictions affecting her ability to work as a dispatcher.  GONZALES was and is otherwise qualified to do her job, most particularly as EPT.

50.    At all times herein mentioned, CUTAIA, SIMONETTI, SMITH and PETERSON were supervisors and employees of MARTINEZ and, in doing the acts herein described and referred to, were acting in the course and scope of their authority as agents and employees, and in the transaction of the business of their employment or agency.  MARTINEZ is therefore liable to GONZALES for the acts of SIMONETTI and PETERSON as heretofore alleged.

TOSCHI ▪ SIDRAN ▪
COLLINS ▪ DOYLE
A PROFESSIONAL
CORPORATION

-13-
COMPLAINT

51.    Notwithstanding GONZALES'S repeated complaints to MARTINEZ regarding CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S conduct, MARTINEZ failed and refused to correct or reprimand CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S behavior and instead ratified their behavior by failing and refusing to acknowledge any wrongdoing on their part.    MARTINEZ through CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON, created and maintained an abusive working environment at MARTINEZ.  The environment at MARTINEZ has become so abusive and unbearable that GONZALES has been forced to take increased sick leave whereas she was a model employee taking minimal sick leave before such conduct began.

52.    As a proximate result Defendants' conduct against GONZALES as alleged above, GONZALES has been harmed in that she has been demoted, was forced to exhaust her sick leave and suffered extreme emotional distress, anxiety, depression and physical manifestations thereof including the onset of diabetes, loss of sleep and problems with concentration.  As a result of such conduct, GONZALES has suffered such damages in an amount to be shown according to proof.

WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set forth.

## THIRD CAUSE OF ACTION

### HARASSMENT BASED ON DISABILITY UNDER

### GOVERNMENT CODE sec. 12940(j)

52.    GONZALES incorporates by reference and realleges paragraphs 1 through 52 as though fully set forth herein.

53.    California Government Code sec. 12940(j) makes it an unlawful employment practice "For an employer... or any other person, because of... physical disability, mental disability, medical condition... to harass an employee."

54.    At all times mentioned herein, GONZALES was afflicted with herniated disks in her cervical spine which substantially limited major life activities in terms of range of motion of her arms and neck the routine physical activities of reaching and grasping with her hands and arms.

TOSCHI • SIDRAN • COLLINS • DOYLE
A PROFESSIONAL CORPORATION

55.    At all times herein mentioned, GONZALES was subjected to repeated harassment by CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON whereby she was berated, humiliated, intimidated and harassed as set forth more fully above.  The harassment has increased in intensity and severity such that GONZALES has been forced to take increased sick leave whereas she previously took minimal sick leave.   GONZALES has been forced by such harassment to seek other employment but then as a form of additional harassment her job search was sabotaged by MARTINEZ as more fully set forth above.

56.    The harassment to which GONZALES has been subjected was and is based on no other reason than GONZALES'S disability including but not limited to herniated cervical disks. GONZALES was otherwise qualified to do her job.

57.    Said harassment created a hostile and abusive work environment for GONZALES as it was and is so pervasive and severe as to alter the conditions of GONZALES'S employment, affecting her ability to perform the necessary functions of her job.

58.    At all times herein mentioned, CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON were supervisors and employees of MARTINEZ and, in doing the acts herein described and referred to, were acting in the course and scope of their authority as agents and employees, and in the transaction of the business of their employment or agency.  MARTINEZ is therefore liable to GONZALES for the acts of CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON as heretofore alleged.

59.    Notwithstanding GONZALES'S repeated complaints to MARTINEZ regarding CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S conduct, MARTINEZ failed and refused to correct or reprimand CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S behavior and instead ratified their behavior by failing and refusing to acknowledge any wrongdoing on their part.   MARTINEZ through CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON, created and maintained an abusive working environment at MARTINEZ.  The environment at MARTINEZ has become so abusive and unbearable that GONZALES has been forced to take increased sick leave whereas she was a model employee taking minimal sick leave before such conduct began.

60.    As a proximate result Defendants' conduct against GONZALES as alleged above, GONZALES has been harmed in that she has been demoted, has been forced to exhaust her sick leave, and suffered extreme emotional distress, anxiety, depression and physical manifestations thereof such as the onset of diabetes, loss of sleep and problems with concentration.  As a result of such conduct, GONZALES has suffered such damages in an amount to be shown according to proof.

WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### FAILURE TO PREVENT HARASSMENT UNDER
### GOVERNMENT CODE sec. 12940(k)

61.    GONZALES incorporates by reference and realleges paragraphs 1 through 60 as though fully set forth herein.

62.    California Government Code sec. 12940(k) makes it an unlawful employment practice "For an employer... to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."    The duty imposed on MARTINEZ by Government Code sec. 12940(k) includes conducting investigation of GONZALES'S claims of harassment and discrimination.

63.    At all times mentioned herein, MARTINEZ owed GONZALES a duty to take all reasonable steps necessary to prevent discrimination and harassment from occurring, including conducting a good faith investigation of GONZALES'S claims of harassment and discrimination.

64.    MARTINEZ breached its duty to GONZALES by failing to take all reasonable steps to prevent such discrimination and harassment, including failing to conduct a good faith investigation into GONZALES'S complaints of discrimination and harassment set forth above. MARTINEZ failed to stop or reprimand CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S behavior as alleged above, and instead ratified their behavior by failing to take any action whatsoever against them and refusing to acknowledge any wrongdoing by them. MARTINEZ'S failure to take all reasonable steps to prevent discrimination and harassment from

1  occurring, and specifically its failure to conduct a good faith investigation of GONZALES'S

2  complaints of discrimination and harassment, was in violation of the FEHA.

3    65.    As a proximate result MARTINEZ'S breach of its duty to take any reasonable

4  steps to prevent the discrimination and harassment of GONZALES, including conducting a good

5  faith investigation of GONZALES'S complaints of discrimination and harassment as alleged

6  above, GONZALES has been harmed in that she has been demoted, was forced to exhaust her

7  sick leave and suffered extreme emotional distress, anxiety, depression and physical

8  manifestations thereof such as the onset of diabetes, loss of sleep and problems with

9  concentration. As a result of such conduct, GONZALES has suffered such damages in an amount

10  to be shown according to proof.

11    WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set

12  forth.

13    ### FIFTH CAUSE OF ACTION

14    ### RETALIATION UNDER GOVERNMENT CODE sec. 12940(h)

15    66.    GONZALES incorporates by reference and realleges paragraphs 1 through 65 as

16  though fully set forth herein.

17    67.    California Government Code sec. 12940(k) makes it an unlawful employment

18  practice "For an employer... to discharge, expel or otherwise discriminate against any person

19  because the person has opposed any practiced forbidden under this part or because the person had

20  filed a complaint, testified, or assisted in any proceeding under this part."

21    68.    Over the course of her employment with MARTINEZ, GONZALES made several

22  complaints to MARTINEZ agents and officials regarding discrimination and harassing conduct

23  committed by CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON on account of

24  GONZALES'S disability.

25    69.    As a proximate result of GONZALES'S complaints of discrimination and

26  harassment as set forth above, and in violation of public policy as set forth above, CUTAIA,

27  SIMONETTI, SMITH, BLUBAUGH and PETERSON and others employed at MARTINEZ,

28  retaliated against GONZALES by forcing her to work excessive dispatch shifts while knowing

TOSCHI • SIDRAN •
COLLINS • DOYLE

A PROFESSIONAL
CORPORATION

1    such work caused GONZALES to suffer physical pain and take increased sick leave, while failing

2    to require other employees, including police assistance with dispatching in their job descriptions,

3    to work in dispatch, by eliminating her EPT position, by instigating unfounded internal affairs

4    investigations against her, by sabotaging her efforts to find other employment and by

5    overworking her in an effort to force her to quit. As a proximate result of complaints by

6    GONZALES of discrimination and harassment as set forth above, and in violation of public

7    policy as set forth above, CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON

8    retaliated against GONZALES by intensifying their campaign of hostility and harassment against

9    GONZALES. The above acts were approved and ratified by MARTINEZ and were sufficiently

10    severe and pervasive that they forced GONZALES to take increased sick leave whereas before

11    such harassment and retaliation she was a model employee taking only minimal sick leave.

12       70.    CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S

13    conduct as alleged above, violated California's public policy, as set forth in California

14    Government Code sec. 12940(h) which prohibits persons from retaliating against employees for

15    exercising their rights under FEHA.

16       71.    As a proximate result CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S

17    and PETERSON'S retaliation and MARTINEZ'S acquiescence in such retaliation, GONZALES

18    has been harmed in that she has been demoted, was forced to exhaust her sick leave and suffered

19    extreme emotional distress, anxiety, depression and physical manifestations thereof such as the

20    onset of diabetes, loss of sleep and problems with concentration. As a result of such conduct,

21    GONZALES has suffered such damages in an amount to be shown according to proof.

22       WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set

23    forth.

## SIXTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

24

25

26       72.    GONZALES incorporates by reference and realleges paragraphs 1 through 71 as

27    though fully set forth herein.

28       73.    At all times herein mentioned, GONZALES was an employee of MARTINEZ.

TOSCHI • SIDRAN •
COLLINS • DOYLE
A PROFESSIONAL
CORPORATION

During that time, CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON subjected GONZALES to repeated acts of harassment and discrimination as set forth above, based on GONZALES'S disability. The harassment and discrimination has increased in intensity and severity such that GONZALES has become despondent, depressed, anxious and fearful for her own economic survival and that of her child. The conduct set forth herein was intentional, malicious, extreme and outrageous and was done for the purpose of causing GONZALES to suffer humiliation, mental anguish and emotional distress. MARTINEZ'S conduct in confirming and ratifying that conduct that was done with the knowledge that GONZALES'S emotional distress would thereby increase, and was done with wanton and reckless disregard of the consequences to GONZALES.

74.    CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON intentionally harassed and discriminated against GONZALES, ignored her complaints of harassment and discrimination, failed to perform proper and good faith investigations and intentionally retaliated against GONZALES for making complaints of same. In so doing, CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON acted with the intent to cause GONZALES to suffer emotional distress, or with reckless disregard of the probability of causing GONZALES to suffer emotional distress.

75.    As a proximate result CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S conduct and MARTINEZ'S approval and ratification of such conduct, GONZALES has been harmed in that she has been demoted, was forced to exhaust her sick leave and suffered extreme emotional distress, anxiety, depression and physical manifestations thereof such as the onset of diabetes, loss of sleep and problems with concentration. As a result of such conduct, GONZALES has suffered such damages in an amount to be shown according to proof.

WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

76.    GONZALES incorporates by reference and realleges paragraphs 1 through 75 as

TOSCHI • SIDRAN •
COLLINS • DOYLE
A PROFESSIONAL
CORPORATION

1   though fully set forth herein.

2       77.    GONZALES has no adequate remedy at law, and if the unlawful conduct of

3   Defendants set forth herein is not immediately enjoined, GONZALES will be constructively

4   terminated from her employment due to the unbearable harassment, discrimination and retaliation

5   that has been, and continues to be imposed upon her.

6       78.    GONZALES therefore requests that this court grant a preliminary and permanent

7   injunction against Defendants as follows:

8           (1) Prohibiting Defendants from engaging in any further acts of harassment,

9               retaliation and discrimination against GONZALES;

10          (2) Ordering that Defendants restore GONZALES to her former position as

11              evidence and property technician;

12          (3) Ordering that Defendants cooperate in good faith in responding to background

13              investigators from other agencies concerning applications for employment by

14              GONZALES.

15  WHEREFORE, GONZALES prays for judgment against Defendants as follows:

16          1.     For past and future economic damages in an amount according to

17                 proof at trial;

18          2.     For past and future non-economic damages including, but not

19                 limited to, emotional distress, pain and suffering and other general

20                 damages as allowed by law, in an amount according to proof at

21                 trial;

22          3.     For injunctive relief in the form of preliminary and permanent

23                 injunctions against Defendants as follows:

24                 (i)     Prohibiting Defendants from engaging in any further acts

25                         of harassment, retaliation and discrimination against

26                         GONZALES;

27                 (ii)    Ordering that Defendants restore GONZALES to her

28                         former position as evidence and property technician;

(iii)    Ordering that Defendants cooperate in good faith in responding to background investigators from other agencies concerning applications for employment by GONZALES.

4.    For reasonable attorney's fees as allowed by law in an amount according to proof;

5.    For costs of suit and expert fees pursuant to applicable statutes; and

6.    For such other and further relief as the court deems just and proper.

DATED: March 27, 2008

TOSCHI ▪ SIDRAN ▪ COLLINS ▪ DOYLE
A Professional Corporation

By: _____
        DAVID R. SIDRAN
        Attorneys for Plaintiff,
        ROBIN GONZALES