DAVID R. SIDRAN, ESQ.  (SBN 121063)
THOMAS C. CROWELL, ESQ.  (SBN 172799)
CHRISTINE Y. LEE, ESQ.   (SBN 247032)
TOSCHI ▪ SIDRAN ▪ COLLINS ▪ DOYLE
A Professional Corporation
100 Webster Street, Suite 300
Oakland, California  94607
Tel:    (510) 835-3400
Fax:    (510) 835-7800

Attorneys for Plaintiff ROBIN GONZALES

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN GONZALES,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF MARTINEZ, DAVID CUTAIA, TOM SIMONETTI, MARK SMITH, GARY PETERSON, DON BLUBAUGH and DOES 1-100 inclusive,<br><br>　　　　　　Defendants. | Case No:  C 08-01754 JSW<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. DISABILITY DISCRIMINATION UNDER AMERICANS WITH DISABILITIES ACT, 42 USC sec. 12101 et seq.<br><br>2. RETALIATION AND COERCION UNDER AMERICANS WITH DISABILITIES ACT, 42 USC sec. 12101 et. seq.<br><br>3. DISABILITY DISCRIMINATION UNDER CALIFORNIA GOVERNMENT CODE sec. 12940(a)<br><br>4. HARASSMENT BASED ON DISABILITY UNDER CALIFORNIA GOVERNMENT CODE sec 12940(k)<br><br>5. FAILURE TO PREVENT AND REMEDY HARASSMENT UNDER CALIFORNIA GOVERNMENT CODE sec. 12940(k)<br><br>6. RETALIATION UNDER CALIFORNIA GOVERNMENT CODE sec. 12940(h)<br><br>7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>8. INJUNCTIVE RELIEF<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, ROBIN GONZALES alleges against defendants CITY OF MARTINEZ, DAVID CUTAIA, TOM SIMONETTI, MARK SMITH, GARY PETERSON, DON BLUBAUGH and DOES 1-100 inclusive, and each of them, as follows and demands a jury trial on all matters herein alleged.

## JURISDICTION AND VENUE

1.     This court has jurisdiction over this action based on 28 U.S.C. sec. 1331.  Venue is proper in this court because the acts of which plaintiff complains took place within the Northern District of California.

## PARTIES

2.     Plaintiff, ROBIN GONZALES (hereinafter "GONZALES") is and was, at all times material herein, a citizen of the State of California, residing in Concord, California.

3.     On information and belief, defendant, CITY OF MARTINEZ (hereinafter "MARTINEZ") is and was, at all material times herein, a public entity organized and existing as a political subdivision of the State of California.

4.     On information and belief, defendant DAVID CUTAIA (hereinafter "CUTAIA"), was and is a citizen of the State of California, residing in Solano County, California.  CUTAIA was Chief of Police for MARTINEZ up to December 31, 2007, after which he retired from MARTINEZ.

5.     On information and belief, defendant TOM SIMONETTI (hereinafter "SIMONETTI"), was and is a citizen of the State of California, residing in Solano County, California.  SIMONETTI was a Commander for MARTINEZ up to December 31, 2007, after which he became Chief of Police.

6.     On information and belief, defendant MARK SMITH (hereinafter "SMITH") was and is a citizen of the State of California, residing in Contra Costa County, California.  SMITH was at all relevant times a Commander for MARTINEZ.

7.     On information and belief, defendant GARY PETERSON (hereinafter "PETERSON") was and is a citizen of the State of California, residing in Solano County, California. PETERSON was a Detective Sergeant for MARTINEZ, and became a Commander as

1    of January 1, 2008.

2        8.    On information and belief, defendant DON BLUBAUGH (hereinafter

3    "BLUBAUGH") was and is a citizen of the State of California, residing in Contra Costa County,

4    California. BLUBAUGH was City Manager for MARTINEZ at all relevant times.

5                                            **FACTS**

6        9.    GONZALES started working at MARTINEZ as a cadet in the early 1980's, and

7    then left to work for the Contra Costa County Sheriff's department as a dispatcher. GONZALES

8    returned to the MARTINEZ police department in January 1985 as a dispatcher and has been

9    continuously employed by MARTINEZ ever since.

10        10.    After approximately one year into her second tenure at MARTINEZ, the police

11    department created the position of police assistant with the primary duties of that position being

12    to maintain the evidence room for the MARTINEZ police department. GONZALES took the job

13    of police assistant and began taking classes on her own time to learn about evidence collection,

14    preservation and procedures. Up to the point of GONZALES taking the position of police

15    assistant, there had been no specific employee at MARTINEZ charged with maintaining the

16    evidence room and consequently the evidence room was in disarray upon the arrival of

17    GONZALES. After several years, GONZALES began taking crime scene investigation courses

18    and began handling evidence at crime scenes for MARTINEZ.

19        11.    In 1992, GONZALES requested a job reclassification change to Evidence/Property

20    Technician, which request was supported and recommended by then Chief of Police Boyd and

21    then Commander CUTAIA. The job reclassification was approved by MARTINEZ and

22    GONZALES held the position of Evidence/Property Technician ("EPT") until the position was

23    eliminated by MARTINEZ on or about November 28, 2007. As an EPT, GONZALES had all the

24    duties she formerly had as a police assistant together with detailed evidence work. GONZALES

25    also worked as a dispatcher intermittently during the aforementioned time frame. GONZALES

26    is, up to this day, the expert on evidence collection and maintenance at MARTINEZ, and despite

27    elimination of the EPT position, she is still responsible for training officers in evidence matters

28    and running the evidence room.

12.    Over the course of her over twenty-three (23) year tenure at MARTINEZ, GONZALES suffered a number of industrial injuries, the most notable of which for purposes of this complaint, occurred on or about June 9, 2000 and consisted of a major injury to GONZALES'S neck with herniated disks which resulted in doctor imposed restrictions on time allowed for dispatching, no repetitive reaching, as well as a 23% permanent disability rating. Said injury was caused in part by the nonergonomic configuration of the dispatch center that was corrected after GONZALES suffered her industrial injury.  Said condition was aggravated by a major on-the-job injury.

13.    GONZALES'S neck injury of June 9, 2000, consisting of multiple herniated cervical disks, limited her ability to work as a dispatcher on a permanent basis insofar as that activity is stressful on the cervical spine. The EPT job description required GONZALES to fill in or relieve in dispatch. Prior to November 2007, GONZALES filled in on occasion as a dispatcher in the dispatch center.  While a number of other MARTINEZ employees had dispatch duties included as part of their job descriptions, GONZALES was the only one of those employees, which included police assistants, who from 2005 and 2007 was assigned to dispatch for approximately two shifts per week by PETERSON and MARTINEZ, despite her industrial injury and resulting disability affecting her ability to work in dispatch.

14.    In approximately 2005, PETERSON became the direct supervisor of GONZALES. Up to that time, GONZALES had been working sporadically in dispatch and her primary job concerned the evidence room.   Upon taking over as her supervisor, PETERSON ordered GONZALES to begin working one day per week in the dispatch center. Over time, PETERSON increased the time and number of days GONZALES had to work in the dispatch center to two to three (2-3) shifts per week, with full knowledge that dispatch work aggravated the industrial injury to her neck.

15.    Prior to PETERSON taking over as supervisor of GONZALES, her work primarily focused on the evidence room in her capacity as EPT.   GONZALES has never had work restrictions affecting her efficacy in the evidence room.

16.    Prior to PETERSON taking over as supervisor of GONZALES, she took very little

TOSCHI ● SIDRAN ●
COLLINS ● DOYLE
A PROFESSIONAL
CORPORATION

1  sick leave and was awarded the sick leave bonus in that regard.  After PETERSON took over as

2  supervisor of GONZALES, he began a concerted campaign to harass, retaliate and discriminate

3  against her on account of her industrial injury and disability, which included but was not limited

4  to, increasing her time as a dispatcher while failing to assign dispatch shifts to other MARTINEZ

5  employees, including police assistants, who had dispatching in their job descriptions.

6  Consequently GONZALES began taking regular sick time to recover from the aggravation to her

7  neck injury caused by increased dispatching duties.  Note that during this period, PETERSON

8  forced GONZALES to run back and forth between the dispatch center and the evidence room

9  (which are located in separate buildings) in order to release evidence while she was on dispatch

10  duty.

11       17.    In or about 2005, because of repeated harassment by PETERSON on account of

12  her disability, GONZALES submitted a written complaint to CUTAIA and SIMONETTI.  In

13  response to the written complaint, CUTAIA, SIMONETTI, SMITH and PETERSON embarked

14  on a course of conduct designed to retaliate against GONZALES for her work restrictions due to

15  her disability, as well as to retaliate against her for complaining about harassment by PETERSON

16  on account of her disability.  That course of retaliatory conduct included the plan to eliminate the

17  EPT position, which in effect would eliminate the position GONZALES had held at MARTINEZ

18  since 1992 when it was created.  The elimination of the EPT position was therefore a direct

19  retaliatory act against GONZALES, despite the fact that on paper it appeared to be a sterile and

20  neutral reallocation of positions within the police department.

21       18.    Following submission of the aforementioned written complaint, as GONZALES

22  was walking by SIMMONETTI'S office while in the course and scope of her employment, she

23  heard SIMONETTI say to then Chief CUTAIA to the effect that GONZALES was running a

24  scam with her doctor's note which limited her job duties due to her neck injury in 2000.  After

25  having been falsely accused by SIMONETTI of dishonesty and corruption in the form of

26  "running a scam," GONZALES spoke to CUTAIA and denied SIMONETTI'S accusation.  In

27  response, CUTAIA screamed and yelled at GONZALES in retaliation for her defending herself

28  against SIMONETTI'S accusation.  Shortly thereafter, GONZALES was informed by CUTAIA

1   that her position of EPT was going to be eliminated because it was no longer needed. CUTAIA

2   stated to GONZALES that the county crime lab would respond to MARTINEZ crime scenes after

3   her EPT position was eliminated.

4        19.    In response to CUTAIA'S statement regarding the crime lab, GONZALES

5   contacted the county crime lab and was advised that in fact they would only respond to

6   MARTINEZ crime scenes in an advisory capacity and that they wanted someone in the

7   department who could handle evidence collection. GONZALES reported her findings from the

8   crime lab in writing to the MARTINEZ city manager who indicated he would provide that

9   information to the MARTINEZ chief. The position of the county crime lab was thereafter

10  ignored by MARTINEZ because the true reason for elimination of the EPT position was to harass

11  and discriminate against GONZALES individually on account of her disability and had nothing

12  whatsoever to do with either a decrease in crime in Martinez, a decrease in the need for an EPT at

13  MARTINEZ or a plan to outsource the EPT work to the County Crime Lab.

14       20.    Prior to threatening elimination of her EPT position, SIMONETTI told

15  GONZALES that he found doctor's notes in her personnel file that contained work restrictions

16  and limitations on account of her industrial injuries. SIMONETTI also told GONZALES that

17  there are only two people in the MARTINEZ with written work limitations, *and he does not like*

18  *it.* SIMONETTI then ordered GONZALES to go back to her doctor and get her note updated,

19  implying that she needed to have her doctor eliminate her work restrictions. SIMONETTI made

20  GONZALES take personal vacation days to see the doctor regarding his dissatisfaction with those

21  work limitations. Upon seeing her doctor at SIMONETTI'S instruction, GONZALES was

22  advised by her neurologist that she might have ADA issues, insofar as MARTINEZ had

23  accommodated her work restrictions for a number of years but now wanted to change the rules.

24       21.    In June 2006, PETERSON reprimanded GONZALES in writing for sick leave

25  abuse at a time when GONZALES took time off work due to her industrial injury and was

26  therefore protected by the California Family Rights Act. When GONZALES asked about family

27  medical leave she was told she would have to take it unpaid despite the fact that she had accrued

28  over 500 unused sick leave hours, vacation and comp time.

22.    In November 2007, MARTINEZ eliminated the EPT position, ostensibly to accommodate a new dispatcher position due to the need for additional personnel in dispatch. At the same time, MARTINEZ has had an unfilled police assistant position for several years. Rather than reallocate the unused police assistant position to dispatch, which would have had no effect on any existing employee of MARTINEZ, CUTAIA, SIMONETTI, SMITH and PETERSON schemed to eliminate the EPT position held by GONZALES, as an act of harassment, retaliation and discrimination on account of her disability, while continuing to leave the open police assistant position unfilled.

23.    When GONZALES was first advised that the EPT position would be eliminated, she started a grievance procedure as outlined in the MARTINEZ memorandum of understanding with its employees ("MOU"). Despite the fact that the grievance included complaints against PETERSON, GONZALES was instructed to first bring her grievance directly to PETERSON. Following submission of the grievance to PETERSON, the MOU required it be brought to the Commander and Chief of Police. Under the MOU the City Manager, BLUBAUGH was to hire two investigators to investigate the grievance, one chosen by MARTINEZ and one chosen by GONZALES. Instead, BLUBAUGH hired one investigator in the employ of the City's outside counsel. The grievance was then denied as the result of a skewed and biased investigation as to which the outcome was preordained.

24.    Upon elimination of her position as EPT, GONZALES was provided two (2) alternative positions at MARTINEZ:  dispatcher or police assistant. Despite the fact that there were potentially a number of other positions at MARTINEZ that could accommodate the disabilities of GONZALES, no effort was made to find any such alternative positions. GONZALES was then ordered to see a neurologist chosen by MARTINEZ, and that neurologist corroborated the findings and work restrictions placed by GONZALES'S personal neurologist, which effectively precluded her from taking the dispatcher position.

25.    In June 2007, GONZALES hired ADA specialist, Susan Skamser and had an interactive meeting with MARTINEZ on June 26, 2007. At that time MARTINEZ was informed that GONZALES could not do the dispatch position fulltime and it was questionable whether she

1   could do the police assistant job given her disabilities and restrictions. Despite the fact that

2   several positions have opened up at MARTINEZ during the relevant time frame, including

3   Chief's Secretary, Records Clerk, Payroll Clerk at City Hall (2 openings), Administrative Aid in

4   Records Department, Events Coordinator at City Hall, Personal Technician at City Hall, Business

5   License Clerk, Water Department Clerk and Permit Technician, all of which would have

6   accommodated her work restrictions, GONZALES was offered none of those positions at

7   MARTINEZ in connection with elimination of her EPT position.

8        26.     In connection with the disability discrimination experienced by GONZALES, she

9   filed a complaint with the California Department of Fair Employment And Housing ("DFEH").

10  That complaint has been investigated and concluded with a "right to sue" letter from DFEH such

11  that GONZALES has exhausted her administrative remedies both through DFEH and

12  MARTINEZ.

13       27.     On June 26, 2007, GONZALES was informed by BLUBAUGH that MARTINEZ

14  would agree to put her in the police assistant position upon elimination of the EPT position *IF

15  AND ONLY IF*, she dropped her DFEH complaint. When GONZALES asked what would happen

16  if she did not dismiss her DFEH complaint, BLUBAUGH told her that her pay would be frozen.

17       28.     On July 31, 2007, BLUBAUGH again summoned GONZALES to his office and

18  told her that if she did not agree to his forthcoming proposal, their meeting never happened. The

19  proposal was that GONZALES would receive five (5) years of "age" through PERS which would

20  cost the city $42,000. MARTINEZ would also give GONZALES two (2) years of service so she

21  could get full medical coverage upon retirement. BLUBAUGH also informed GONZALES that

22  SIMONETTI was going to be promoted to Chief upon the retirement of CUTAIA and he did not

23  think GONZALES would be able to "get along" in the department anymore.

24       29.     The matter of eliminating the EPT position for GONZALES was set for a vote

25  before the City Council at a time when MARTINEZ knew GONZALES was scheduled to be out

26  of state on vacation. MARTINEZ ignored a request by GONZALES to postpone the decision on

27  eliminating her position until a date she could appear before City Council and ignored a plea by

28  her attorney at the City Council meeting for such a postponement. MARTINEZ then eliminated

1    her position without comment or further opportunity to speak before the City Council.

2        30.    On October 23, 2007, GONZALES received a letter from MARTINEZ

3    constituting a layoff notice. The stated reasons for laying off GONZALES were pretextual and

4    included a claimed lack of work. As possible accommodations for her disability, MARTINEZ

5    offered GONZALES the positions of maintenance worker or police officer trainee, in addition to

6    the police assistant and dispatcher jobs previously offered. MARTINEZ was fully aware at that

7    time that her disabilities prevented GONZALES from being a maintenance worker or police

8    officer. She was then given ten (10) days to choose her new position.

9        31.    On August 17, 2007, GONZALES submitted a request for two (2) days of vacation

10    in January 2008. The vacation request was not approved, despite the fact that such a request had,

11    to the knowledge of GONZALES, never been denied by MARTINEZ in the past. GONZALES

12    was forced to submit a grievance on the denial of the vacation in order to have her vacation

13    request approved. Apparently, the delay in responding to GONZALES'S vacation request was

14    caused by PETERSON'S retaliatory conduct in failing to submit the request for approval.

15        32.    On November 21, 2007, GONZALES reluctantly accepted the demotion to police

16    assistant since her only other choice was to be unemployed.  As a single mother, unemployment

17    was not a viable economic option for GONZALES.

18        33.    On December 1, 2007 GONZALES submitted a complaint regarding a hostile

19    work environment based on PETERSON and the dispatch supervisor conspiring to harass and

20    discriminate against GONZALES on account of her disability, based on a conversation that took

21    place between PETERSON and the dispatch supervisor on an open recorded line in the dispatch

22    center in which PETERSON and the dispatch supervisor were overheard colluding to further

23    harm the employment status of GONZALES at MARTINEZ. After a cursory investigation of

24    said complaint which resulted in the self-serving finding that the complaint was not well founded,

25    MARTINEZ instigated an internal affairs investigation of GONZALES in retaliation for reporting

26    the further harassment, retaliation and discrimination by PETERSON set forth in this paragraph.

27    MARTINEZ issued a written reprimand to GONZALES for listening to the open recorded line

28    conversation involving PETERSON on the grounds that in doing so, GONZALES was violating

1  the MARTINEZ's media policy by using MARTINEZ media for personal use.  In so doing,

2  MARTINEZ has further discriminated and retaliated against GONZALES by applying its media

3  policy in a selective and harassing manner against GONZALES based on her disability, when in

4  fact listing to the conversation which constituted further disability discrimination and harassment

5  in its own right did constitute MARTINEZ business since it related to a pending claim of

6  discrimination, retaliation, harassment and hostile work environment between GONZALES and

7  the MARTINEZ which was the subject of a Government Code claim, FEHA complaint, EEOC

8  complaint and impending litigation.  At the same time, MARTINEZ has consistently ignored

9  other more egregious violations of its media policy, and the media policy has gone largely

10  unenforced except where MARTINEZ chooses to use the policy as a weapon of discrimination,

11  retaliation and harassment.

12      34.    On December 4, 2007, GONZALES was informed that her primary duty as police

13  assistant would be to take over training, and to continue handling the evidence room as well as

14  dispatching on a fill in basis.  GONZALES complained that having to handle both evidence and

15  training was too much for one person to handle: Her complaint has thus far been ignored.

16      35.    Upon taking over training for MARTINEZ, GONZALES learned that training was

17  in disarray with a long backlog of unfinished work by her predecessor.  GONZALES submits that

18  training in itself is a full-time job within MARTINEZ, while handling the evidence room is also

19  at least a 20-30 hours per week position.  Yet, MARTINEZ has required GONZALES to handle

20  both training, evidence and dispatch duties in her new demoted position as police assistant.

21  Despite using the lack of need for an EPT as a pretext for eliminating her position, MARTINEZ

22  has thus far experience no decline in the intake of crime scene and other evidence, and is

23  continuing to have GONZALES handle her former duties as EPT in her new demoted position.

24      36.    GONZALES is informed and believes and based thereon alleges, that the current

25  plan of harassment, retaliation and disability discrimination being directed against her is an effort

26  to overwork her to the point she is forced to quit, by assigning her more job duties than a single

27  fulltime employee could reasonably be expected to complete in a regular work week.

28      37.    In addition to harassing, retaliating against and discriminating against

1   GONZALES on the job on account of her disability, MARTINEZ has also effectively prevented

2   GONZALES from obtaining employment elsewhere.  In September 2006, GONZALES was a

3   candidate for a desirable position at the Citrus Heights Police Department.  While the job in

4   Citrus Heights would have involved a substantially longer commute than her current commute

5   from her home in Concord, GONZALES was willing to endure the commute to Citrus Heights in

6   order to escape ongoing harassment, retaliation and discrimination at MARTINEZ.  After passing

7   all stages of the employment process including the polygraph, the last stage of the employment

8   process for City of Citrus Heights was a background investigation.  When the background

9   investigator from Citrus Heights made appointments with SMITH of MARTINEZ, SMITH first

10  failed to appear for the meeting and later refused to speak with the Citrus Heights investigator.

11  The Citrus Heights investigator advised GONZALES that in his eleven (11) years as a

12  background investigator he had never had a public agency refuse to speak to him about an

13  employee. A few days later Citrus Heights called GONZALES at work to advise her that she did

14  not receive the job: Due to the upset and distress from this event, which made clear that not only

15  was MARTINEZ trying to harass her out of her job, but that MARTINEZ also intended to

16  prevent her from getting another job, GONZALES had a car wreck on the way home from work

17  that day. GONZALES is informed and thereon alleges that MARTINEZ is in the practice of fully

18  cooperating with background investigators from other police departments regarding efforts by

19  MARTINEZ personnel to change jobs, and that the refusal of MARTINEZ to cooperate with

20  Citrus Heights in her case, was yet another act of harassment, retaliation and discrimination

21  against GONZALES on account of her disability.

22      38.    GONZALES timely filed DFEH complaints and Government Code claims under

23  the California Tort Liability Act against MARTINEZ, CUTAIA, SIMONETTI, SMITH,

24  BLUBAUGH and PETERSON.  GONZALES has received right to sue letters from DFEH as to

25  said defendants, and her Government Code claims were denied by operation of law when they

26  were not responded to within 45 days of submission. GONZALES timely files this lawsuit

27  against said defendants following such DFEH complaints and Government Code claims.

28

TOSCHI • SIDRAN •
COLLINS • DOYLE
A PROFESSIONAL
CORPORATION

## FIRST CAUSE OF ACTION

## DISABILITY DISCRIMINATION UNDER AMERICANS WITH DISABILITIES

## ACT, 42 USC sec. 12101 et seq., including but not limited to sec 12112(a)

### [Against City of Martinez Only]

39.    GONZALES incorporates by reference and realleges paragraphs 1 through 39 as though fully set forth herein.

40.    The Americans With Disabilities Act at 42 USC sec. 12101 *et. seq.*, and specifically sec. 12112(a) make it an unlawful employment practice to discriminate against an individual on account of their physical disability.

41.    At all times mentioned herein, GONZALES was afflicted with herniated disks in her cervical spine which substantially limited major life activities in terms of range of motion of her arms and neck the routine physical activities of reaching and grasping with her hands and arms.

42.    At all times herein mentioned MARTINEZ discriminated against GONZALES by eliminating her position, demoting her, and now saddling her with more work than one full-time employee could reasonably be expected to complete in a regular workweek.

43.    Notwithstanding complaints by GONZALES regarding the aforementioned discrimination, MARTINEZ failed and refused to correct or reprimand its employees such as CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON, and instead ratified and approved their behavior by refusing to acknowledge any wrongdoing on their part and allowing them to create and maintain an abusive and hostile work environment at MARTINEZ.

44.    As a proximate result of the defendants' conduct against GONZALES as alleged above, GONZALES has been harmed and has suffered as loss of employment benefits, including being forced to exhaust her sick leave, as well as extreme emotional distress, mental anguish, depression, anxiety, loss of sleep, problems with concentration, and other physical manifestations of stress such as the onset of diabetes, in addition to attorney's fees and costs. As a result of such discrimination and consequent harm, GONZALES has suffered such damages in an amount according to proof.

1    WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set

2    forth.

3                            **SECOND CAUSE OF ACTION**

4    **RETALIATION AND COERCION UNDER AMERICANS WITH DISABILITIES**

5    **ACT, 42 USC sec. 12101 et seq., including but not limited to sec 12203**

6                            **[Against City of Martinez Only]**

7        45.    GONZALES incorporates by reference and realleges paragraphs 1 through 44 as

8    though fully set forth herein.

9        46.    The Americans With Disabilities Act at 42 USC sec. 12101 *et. seq.,* and

10   specifically sec. 12203(a) make it an unlawful employment practice to discriminate against any

11   individual because such individual has opposed any act or practice of disability discrimination or

12   because such individual made a charge, testified, assisted, or participated in any manner in an

13   investigation, proceeding, or hearing regarding disability discrimination.   Section 12203 also

14   makes it unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise

15   or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or

16   her having aided or encouraged any other individual in the exercise or enjoyment of, any right to

17   oppose or complain about discrimination on account of their physical disability.

18       47.    At all times mentioned herein, GONZALES was afflicted with herniated disks in

19   her cervical spine which substantially limited major life activities in terms of range of motion of

20   her arms and neck the routine physical activities of reaching and grasping with her hands and

21   arms.

22       48.    At all times herein mentioned MARTINEZ retaliated against and coerced

23   GONZALES by berating, humiliating, intimidating, and harassing GONZALES as set forth more

24   fully above.  Specifically, defendant has embarked on a course of action to force GONZALES out

25   of her employment at MARTINEZ by eliminating her position, subjecting her to a hostile work

26   environment, demoting her, and now saddling her with more work than one full-time employee

27   could reasonably be expected to complete in a regular work week.

28       49.    Notwithstanding   complaints   by   GONZALES   regarding   the   aforementioned

TOSCHI • SIDRAN •
COLLINS • DOYLE
A PROFESSIONAL
CORPORATION

                                    -13-
                        **FIRST AMENDED COMPLAINT**

1    discrimination, MARTINEZ failed and refused to correct or reprimand its employees such as

2    CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON, and instead ratified and

3    approved their behavior by refusing to acknowledge any wrongdoing on their part and allowing

4    them to create and maintain an abusive and hostile work environment at MARTINEZ.

5         50.    As a proximate result of the defendants' conduct against GONZALES as alleged

6    above, GONZALES has been harmed and has suffered as loss of employment benefits, including

7    being forced to exhaust her sick leave, as well as extreme emotional distress, mental anguish,

8    depression, anxiety, loss of sleep, problems with concentration, and other physical manifestations

9    of stress such as the onset of diabetes, in addition to attorney's fees and costs. As a result of such

10   discrimination and consequent harm, GONZALES has suffered such damages in an amount

11   according to proof.

12        WHEREFORE, GONZALES prays for judgment against Defendant as hereinafter set

13   forth.

## THIRD CAUSE OF ACTION

## DISABILITY DISCRIMINATION UNDER CALIFORNIA

## GOVERNMENT CODE sec. 12940(a)

### [Against City of Martinez Only]

18        51.    GONZALES incorporates by reference and realleges paragraphs 1 through 50 as

19   though fully set forth herein.

20        52.    California Government Code sec. 12940(a) makes it an unlawful employment

21   practice "For an employer, because of the physical disability, mental disability, medical

22   condition... of any person ... to discriminate against the person in compensation or in terms,

23   conditions, or privileges of employment."

24        53.    At all times mentioned herein, GONZALES was afflicted with herniated disks in

25   her cervical spine which substantially limited major life activities in terms of range of motion of

26   her arms and neck the routine physical activities of reaching and grasping with her hands and

27   arms.

28        54.    At all times mentioned herein, MARTINEZ, through its employees and agents,

1    including but not limited to CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON,

2    discriminated against GONZALES by berating, humiliating, intimidating and harassing her as set

3    forth more fully above. MARTINEZ through its employees and agents, including but not limited

4    to CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON negatively affected

5    GONZALES'S employment benefits and privileges by eliminating her position as EPT, writing

6    her up for abuse of sick leave, instigating internal affairs investigations against her and imposing

7    upon her an impossible work load as well as dispatch duties that were known to cause her

8    physical harm while not assigning those same duties to other qualified employees with dispatch

9    duties in their job descriptions. The discrimination has increased in intensity and severity such

10   that GONZALES'S ability to do her work has been affected and she has suffered extreme

11   emotional distress.

12        55.    The discrimination to which GONZALES has been subjected was based on no

13   other reason that GONZALES'S industrial injuries and resulting disabilities including but not

14   limited to her cervical disk herniations and resulting work restrictions affecting her ability to

15   work as a dispatcher. GONZALES was and is otherwise qualified to do her job, most particularly

16   as EPT.

17        56.    At all times herein mentioned, CUTAIA, SIMONETTI, SMITH and PETERSON

18   were supervisors and employees of MARTINEZ and, in doing the acts herein described and

19   referred to, were acting in the course and scope of their authority as agents and employees, and in

20   the transaction of the business of their employment or agency. MARTINEZ is therefore liable to

21   GONZALES for the acts of SIMONETTI and PETERSON as heretofore alleged.

22        57.    Notwithstanding GONZALES'S repeated complaints to MARTINEZ regarding

23   CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S conduct,

24   MARTINEZ failed and refused to correct or reprimand CUTAIA'S, SIMONETTI'S, SMITH'S,

25   BLUBAUGH'S and PETERSON'S behavior and instead ratified their behavior by failing and

26   refusing to acknowledge any wrongdoing on their part. MARTINEZ through CUTAIA,

27   SIMONETTI, SMITH, BLUBAUGH and PETERSON, created and maintained an abusive

28   working environment at MARTINEZ. The environment at MARTINEZ has become so abusive

1  and unbearable that GONZALES has been forced to take increased sick leave whereas she was a

2  model employee taking minimal sick leave before such conduct began.

3      58.    As a proximate result of Defendants' conduct against GONZALES as alleged

4  above, GONZALES has been harmed in that she has been demoted, was forced to exhaust her

5  sick leave and suffered extreme emotional distress, anxiety, depression and physical

6  manifestations thereof including the onset of diabetes, loss of sleep and problems with

7  concentration. As a result of such conduct, GONZALES has suffered such damages in an amount

8  to be shown according to proof.

9      WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set

10  forth.

## FOURTH CAUSE OF ACTION

### HARASSMENT BASED ON DISABILITY UNDER

### GOVERNMENT CODE sec. 12940(j)

#### [Against All Defendants]

15      59.    GONZALES incorporates by reference and realleges paragraphs 1 through 58 as

16  though fully set forth herein.

17      60.    California Government Code sec. 12940(j) makes it an unlawful employment

18  practice "For an employer... or any other person, because of... physical disability, mental

19  disability, medical condition... to harass an employee."

20      61.    At all times mentioned herein, GONZALES was afflicted with herniated disks in

21  her cervical spine which substantially limited major life activities in terms of range of motion of

22  her arms and neck the routine physical activities of reaching and grasping with her hands and

23  arms.

24      62.    At all times herein mentioned, GONZALES was subjected to repeated harassment

25  by CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON whereby she was berated,

26  humiliated, intimidated and harassed as set forth more fully above. The harassment has increased

27  in intensity and severity such that GONZALES has been forced to take increased sick leave

28  whereas she previously took minimal sick leave.   GONZALES has been forced by such

harassment to seek other employment but then as a form of additional harassment her job search was sabotaged by MARTINEZ as more fully set forth above.

63.    The harassment to which GONZALES has been subjected was and is based on no other reason than GONZALES'S disability including but not limited to herniated cervical disks. GONZALES was otherwise qualified to do her job.

64.    Said harassment created a hostile and abusive work environment for GONZALES as it was and is so pervasive and severe as to alter the conditions of GONZALES'S employment, affecting her ability to perform the necessary functions of her job.

65.    At all times herein mentioned, CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON were supervisors and employees of MARTINEZ and, in doing the acts herein described and referred to, were acting in the course and scope of their authority as agents and employees, and in the transaction of the business of their employment or agency. MARTINEZ is therefore liable to GONZALES for the acts of CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON as heretofore alleged.

66.    Notwithstanding GONZALES'S repeated complaints to MARTINEZ regarding CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S conduct, MARTINEZ failed and refused to correct or reprimand CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S behavior and instead ratified their behavior by failing and refusing to acknowledge any wrongdoing on their part.    MARTINEZ through CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON, created and maintained an abusive working environment at MARTINEZ.    The environment at MARTINEZ has become so abusive and unbearable that GONZALES has been forced to take increased sick leave whereas she was a model employee taking minimal sick leave before such conduct began.

66.    As a proximate result of Defendants' conduct against GONZALES as alleged above, GONZALES has been harmed in that she has been demoted, has been forced to exhaust her sick leave, and suffered extreme emotional distress, anxiety, depression and physical manifestations thereof such as the onset of diabetes, loss of sleep and problems with concentration. As a result of such conduct, GONZALES has suffered such damages in an amount

to be shown according to proof.

WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set forth.

### FIFTH CAUSE OF ACTION

### FAILURE TO PREVENT HARASSMENT UNDER

### GOVERNMENT CODE sec. 12940(k)

### [Against City of Martinez Only]

67.    GONZALES incorporates by reference and realleges paragraphs 1 through 66 as though fully set forth herein.

68.    California Government Code sec. 12940(k) makes it an unlawful employment practice "For an employer... to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  The duty imposed on MARTINEZ by Government Code sec. 12940(k) includes conducting investigation of GONZALES'S claims of harassment and discrimination.

69.    At all times mentioned herein, MARTINEZ owed GONZALES a duty to take all reasonable steps necessary to prevent discrimination and harassment from occurring, including conducting a good faith investigation of GONZALES'S claims of harassment and discrimination.

70.    MARTINEZ breached its duty to GONZALES by failing to take all reasonable steps to prevent such discrimination and harassment, including failing to conduct a good faith investigation into GONZALES'S complaints of discrimination and harassment set forth above. MARTINEZ failed to stop or reprimand CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S and PETERSON'S behavior as alleged above, and instead ratified their behavior by failing to take any action whatsoever against them and refusing to acknowledge any wrongdoing by them. MARTINEZ'S failure to take all reasonable steps to prevent discrimination and harassment from occurring, and specifically its failure to conduct a good faith investigation of GONZALES'S complaints of discrimination and harassment, was in violation of the FEHA.

71.    As a proximate result of MARTINEZ'S breach of its duty to take any reasonable steps to prevent the discrimination and harassment of GONZALES, including conducting a good

1   faith investigation of GONZALES'S complaints of discrimination and harassment as alleged

2   above, GONZALES has been harmed in that she has been demoted, was forced to exhaust her

3   sick leave and suffered extreme emotional distress, anxiety, depression and physical

4   manifestations thereof such as the onset of diabetes, loss of sleep and problems with

5   concentration. As a result of such conduct, GONZALES has suffered such damages in an amount

6   to be shown according to proof.

7       WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set

8   forth.

9   ## SIXTH CAUSE OF ACTION

10  ### RETALIATION UNDER GOVERNMENT CODE sec. 12940(h)

11  **[Against City of Martinez Only]**

12      72.    GONZALES incorporates by reference and realleges paragraphs 1 through 71 as

13  though fully set forth herein.

14      72.    California Government Code sec. 12940(k) makes it an unlawful employment

15  practice "For an employer... to discharge, expel or otherwise discriminate against any person

16  because the person has opposed any practiced forbidden under this part or because the person had

17  filed a complaint, testified, or assisted in any proceeding under this part."

18      73.    Over the course of her employment with MARTINEZ, GONZALES made several

19  complaints to MARTINEZ agents and officials regarding discrimination and harassing conduct

20  committed by CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON on account of

21  GONZALES'S disability.

22      74.    As a proximate result of GONZALES'S complaints of discrimination and

23  harassment as set forth above, and in violation of public policy as set forth above, MARTINEZ

24  retaliated against GONZALES by forcing her to work excessive dispatch shifts while knowing

25  such work caused GONZALES to suffer physical pain and take increased sick leave, while failing

26  to require other employees, including police assistance with dispatching in their job descriptions,

27  to work in dispatch, by eliminating her EPT position, by instigating unfounded internal affairs

28  investigations against her, by sabotaging her efforts to find other employment and by

1   overworking her in an effort to force her to quit.  As a proximate result of complaints by

2   GONZALES of discrimination and harassment as set forth above, and in violation of public

3   policy as set forth above, MARTINEZ retaliated against GONZALES by intensifying their

4   campaign of hostility and harassment against GONZALES.  The above acts were sufficiently

5   severe and pervasive that they forced GONZALES to take increased sick leave whereas before

6   such harassment and retaliation she was a model employee taking only minimal sick leave.

7       75.    MARTINEZ'S conduct as alleged above violated California's public policy, as set

8   forth in California Government Code sec. 12940(h) which prohibits employers from retaliating

9   against employees for exercising their rights under FEHA.

10      76.    As a proximate result of MARTINEZ'S retaliation, GONZALES has been harmed

11  in that she has been demoted, was forced to exhaust her sick leave and suffered extreme

12  emotional distress, anxiety, depression and physical manifestations thereof such as the onset of

13  diabetes, loss of sleep and problems with concentration.  As a result of such conduct,

14  GONZALES has suffered such damages in an amount to be shown according to proof.

15      WHEREFORE, GONZALES prays for judgment against Defendant as hereinafter set

16  forth.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### [Against All Defendants]

20      77.    GONZALES incorporates by reference and realleges paragraphs 1 through 76 as

21  though fully set forth herein.

22      78.    At all times herein mentioned, GONZALES was an employee of MARTINEZ.

23  During that time, CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON subjected

24  GONZALES to repeated acts of harassment and discrimination as set forth above, based on

25  GONZALES'S disability.  The harassment and discrimination has increased in intensity and

26  severity such that GONZALES has become despondent, depressed, anxious and fearful for her

27  own economic survival and that of her child.  The conduct set forth herein was intentional,

28  malicious, extreme and outrageous and was done for the purpose of causing GONZALES to

1    suffer humiliation, mental anguish and emotional distress.  MARTINEZ'S conduct in confirming

2    and ratifying that conduct was done with the knowledge that GONZALES'S emotional distress

3    would thereby increase, and was done with wanton and reckless disregard of the consequences to

4    GONZALES.

5         79.    CUTAIA, SIMONETTI, SMITH, BLUBAUGH and PETERSON intentionally

6    harassed and discriminated against GONZALES, ignored her complaints of harassment and

7    discrimination, failed to perform proper and good faith investigations and intentionally retaliated

8    against GONZALES for making complaints of same.  In so doing, CUTAIA, SIMONETTI,

9    SMITH, BLUBAUGH and PETERSON acted with the intent to cause GONZALES to suffer

10   emotional distress, or with reckless disregard of the probability of causing GONZALES to suffer

11   emotional distress.

12        80.    As a proximate result of CUTAIA'S, SIMONETTI'S, SMITH'S, BLUBAUGH'S

13   and PETERSON'S conduct and MARTINEZ'S approval and ratification of such conduct,

14   GONZALES has been harmed in that she has been demoted, was forced to exhaust her sick leave

15   and suffered extreme emotional distress, anxiety, depression and physical manifestations thereof

16   such as the onset of diabetes, loss of sleep and problems with concentration.  As a result of such

17   conduct, GONZALES has suffered such damages in an amount to be shown according to proof.

18        WHEREFORE, GONZALES prays for judgment against Defendants as hereinafter set

19   forth.

## EIGHTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

#### [Against All Defendants]

23        81.    GONZALES incorporates by reference and realleges paragraphs 1 through 80 as

24   though fully set forth herein.

25        82.    GONZALES has no adequate remedy at law, and if the unlawful conduct of

26   Defendants set forth herein is not immediately enjoined, GONZALES will be constructively

27   terminated from her employment due to the unbearable harassment, discrimination and retaliation

28   that has been, and continues to be imposed upon her.

TOSCHI • SHIBAN •
COLLINS • DOYLE
A PROFESSIONAL
CORPORATION

-21-

**FIRST AMENDED COMPLAINT**

83.    GONZALES therefore requests that this court grant a preliminary and permanent injunction against Defendants as follows:

(1) Prohibiting Defendants from engaging in any further acts of harassment, retaliation and discrimination against GONZALES;

(2) Ordering that Defendant, MARTINEZ, restore GONZALES to her former position as evidence and property technician;

(3) Ordering that Defendant, MARTINEZ, cooperate in good faith in responding to background investigators from other agencies concerning applications for employment by GONZALES.

WHEREFORE, GONZALES prays for judgment against Defendants as follows:

1.    For past and future economic damages in an amount according to proof at trial;

2.    For past and future non-economic damages including, but not limited to, emotional distress, pain and suffering and other general damages as allowed by law, in an amount according to proof at trial;

3.    For injunctive relief in the form of preliminary and permanent injunctions against Defendants as follows:

(i)    Prohibiting Defendants from engaging in any further acts of harassment, retaliation and discrimination against GONZALES;

(ii)    Ordering that Defendant, MARTINEZ, restore GONZALES to her former position as evidence and property technician;

(iii)    Ordering that Defendant, MARTINEZ, cooperate in good faith in responding to background investigators from other agencies concerning applications for employment by GONZALES.

4.    For reasonable attorney's fees as allowed by law in an amount according to

1        proof;

2    5.    For costs of suit and expert fees pursuant to applicable statutes; and

3    6.    For such other and further relief as the court deems just and proper.

4    DATED:  June _13_, 2008

5

6                        TOSCHI · SIDRAN · COLLINS · DOYLE
                         A Professional Corporation
7

8                        By: _____
9                             DAVID R. SIDRAN
10                            Attorneys for Plaintiff,
                              ROBIN GONZALES
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TOSCHI · SIDRAN ·
COLLINS · DOYLE
A PROFESSIONAL
CORPORATION

**PROOF OF SERVICE**

Gonzales v. City of Martinez, et al.

U.S. District Court
Northern District of California 3:08-cv-01754-JSW

I, the undersigned, am employed in the County of Alameda, State of California. I am over the age of 18 and not a party to the within action; my business address is Toschi, Sidran, Collins & Doyle, 100 Webster Street, Suite 300, Oakland, CA 94607. .

On June 20, 2008, I served the foregoing document(s), described as:

**FIRST AMENDED COMLAINT**

**( X )    BY MAIL**   I placed the document(s) in a sealed envelope(s) addressed to the party(ies) listed below, and deposited such envelope(s) in the mail at Oakland, CA.  The envelope(s) was/were mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.

**( )    BY FACSIMILE SERVICE**  On _____, 2008, at approximately _____ .m., from facsimile machine telephone number (510) 835-7800, I caused the above-listed document(s) to be transmitted by facsimile to the person(s) and number(s) listed below, and that transmission was reported as complete and without error.  The transmission report was properly issued by the transmitting facsimile machine and is attached hereto.

**( )    BY PERSONAL SERVICE**   I caused the document(s) to be hand delivered in sealed envelope(s) to the offices of the addressee(s)

**( X )   BY EMAIL** On June 20, 2008, a PDF copy was emailed to the party(ies) listed below.

**Attorneys for Defendants City of Martinez, David Cutaia,**
**Tom Simonetti, Mark Smith, Gary Peterson, and Don Blubaugh**

Cynthia O'Neill, Esq.
Suzanne Solomon, Esq.
LIEBERT, CASSIDY, WHITMORE
A Professional Law Corporation
153 Townsend Street, Suite 520
San Francisco, CA 94107
Tel: (415) 512-3000
Fax: (415) 856-0306
coneill@lcwlegal.com
ssolomon@lcwlegal.com

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed on June 20, 2008, at Oakland, California.

_Meuy Saephan_

Meuy Saephan

File No.: 1098