IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBIN GONZALES,

    Plaintiff,

v.

CITY OF MARTINEZ, et al.,

    Defendants.

No. C 08-01754 JSW

**NOTICE OF QUESTIONS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON JUNE 5, 2009 AT 9:00 A.M.:

    The Court has reviewed the parties' papers and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, with pin cites and without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority. The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

**United States District Court**
For the Northern District of California

1  The parties shall each have 15 minutes to address the following questions:

2  1.  Plaintiff contends that being required to work 2 to 3 shifts per week in the Dispatch Center violated the work restrictions set by her neurologist, Dr. McQuinn. (Declaration of Robin Gonzales, ¶ 9.) However, the note from Dr. McQuinn in the record, dated March 28, 2002, provides that Plaintiff's work in the Dispatch Center is not to exceed 3 days per week and not to exceed 2 consecutive days. (Declaration of Tom Simonetti, Ex. 4.)
    (a)  Specifically where in the record in there any evidence that Plaintiff's work restrictions set by Dr.Quinn were more limited than those provided in the note dated March 28, 2002?
    (b)  Assuming *arguendo* that requiring Plaintiff to work between 2 to 3 shifts per week in the Dispatch Center did not violate the work restrictions set by Dr. McQuinn, on what authority does Plaintiff rely to support her argument that requiring Plaintiff to work shifts in the Dispatch Center was an adverse employment action based on her disability? On what authority do Defendants rely in support of their argument that requiring Plaintiff to work in the Dispatch Center with knowledge that dispatch work aggravated Plaintiff's injury to her neck was not disability discrimination?
    (c)  Plaintiff contends that she was assigned to work more and more dispatch shifts which was known to cause her great pain. In support of this purported disputed fact, Plaintiff cites to the deposition of David J. Cutaia in which he states:
        Q:  Okay. Do you recall that – when Ms. Gonzales was assigned two of her four shifts to dispatch that she began complaining that that caused her physical pain because of an industrial injury she had?
        A:  I was aware as I believe that Commander Simonetti made me aware of that.
        Q:  And what do you recall being done in that regard?
        A:  I believe that Commander Simonetti met with her immediately and said if you cannot do the two days, we will change that, you know, give me a memo or a note saying that you can't and we will immediately change that. In fact, we'll pull you completely out of dispatch if that causes or exacerbates a malady that you may have.
(Sidran Decl., Ex. C (Cutaia Depo.) at 83:5-17.) Does Plaintiff dispute that she was asked for a note or memo to support her contention that she had work restrictions beyond what was stated in Dr. McQuinn's note dated March 28, 2002? If so, on what specific evidence in the record, if any, does Plaintiff rely?
    (d)  Plaintiff cites to deposition testimony from her doctor stating that she wrote a letter dated August 30, 2005 which clarified that one day as stated in her April 7, 2002 report equals eight and no more than ten hours. (Sidran Decl., Ex. G (McQuinn Depo.) at 58:10-25.) Where in the record is there a copy of this letter? What specific evidence in the record, if any, shows if and when Plaintiff provided this letter to anyone at the Police Department?

2.  Plaintiff argues that she made multiple complaints against Defendants, including a complaint about Peterson's criticism of her sick leave usage. However the evidence to which she cites, Exhibit A to the Declaration of Robin Gonzales, does not contain any such complaint. (Opp. at 21-22.)
    (a)  Specifically where in the record is there evidence, if any, that Plaintiff complained about Peterson's criticism of her sick leave?
    (b)  If Plaintiff made such complaints, when and to whom did she complain about Peterson's criticism of her sick leave usage?

3.  On what specific evidence in the record, if any, does Plaintiff rely to demonstrate that Peterson placed her on sick leave monitoring even though he knew that she had been taking increased sick leave due to the aggravation to her industrial injury? Assuming

*argendo* that there is such evidence in the record, what is Defendants' best argument that such conduct would not constitute discrimination based on Plaintiff's disability?

4. Plaintiff argues that "the shift in perception of how much time the EPT job took to perform stems directly from Peterson's discriminatory audit, where he falsified the existence of a large purging backlog." (Opp. at 18-19.)
   (a) Where in there record is there evidence, if any, to support Plaintiff's contention that Peterson was involved in the decision making process regarding the elimination of the EPT position or influenced the decision makers?
   (b) Even assuming *arguendo* that Peterson falsified the existence of a large purging backlog, the existence of a large backlog would tend to show that Plaintiff needed more time to get the EPT job finished, not less. On what basis does Plaintiff contend that such purportedly false backlog information influenced the decision makers to believe that the EPT position was not a full time position?

5. In light of the evidence that Plaintiff was allowed to keep the same salary when she became a police assistant, on what basis does Plaintiff contend that being transferred from the EPT position to the police assistant position was a demotion? What specific evidence in the record, if any, supports Plaintiff's contention?

6. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55 (1996) stands for the proposition that supervisory employees can not be held liable for harassing an employee based on personnel management decisions. Do Defendants have authority for the proposition that the City, as Plaintiff's employer, could not be held liable for harassment based on such conduct?

7. Smith initially stated that he did not speak to the background investigator from Citrus Heights based on a standard Police Department procedure to say nothing to background investigators but instead, allow the files to speak to themselves. (Declaration of Robin Gonzales, Ex. N.) Smith later stated a different reason – that it was his personal policy to not discuss employee's substantive qualifications unless they asked him to provide a personal reference. (Declaration of Mark Smith, ¶¶ 3, 4.) Plaintiff also submits evidence showing that Smith told Simonetti that he did not think he had to talk to the background investigator about Plaintiff because his name was not listed on the background paperwork as her direct supervisor. (Declaration of David R. Sidran, Ex. D (Simonetti Depo.) at 140:14-25.) What is Defendants' best argument as to why does such evidence not create a question of fact regarding disability discrimination?

8. Do the parties have anything further they wish to address?

**IT IS SO ORDERED.**

Dated: June 4, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

3